U.S. NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 29, 2006                                    United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| IN RE:<br><br>LANNY PAUL PARR, and<br>SUSAN VIRRAE PARR,<br><br>Debtors. | Case No. 05-70403-HDH-7 |
| FIRST NATIONAL BANK OF WICHITA FALLS,<br><br>    Plaintiff,<br><br>V.<br><br>LANNY PAUL PARR,<br><br>    Defendant. | Adversary Complaint No. 05-07011 |

### MEMORANDUM OPINION ON DISCHARGEABILITY COMPLAINT

On June 14, 2006, this Court conducted a trial on the Complaint to Determine Dischargeability of Debt, filed by Plaintiff, First National Bank of Wichita Falls. Both sides appeared

**Memorandum Opinion on Dischargeability Complaint**                                    Page 1

and offered testimony, documentary evidence, and argument. At the conclusion of the trial, the Court took the matter under advisement, and gave counsel for each of the parties time to submit post-trial briefs.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A) and (I).

**Background Facts**

Debtor, Lanny Paul Parr, was the owner and chief operating officer of Parr Chevrolet, Pontiac, Oldsmobile, Inc., ("Parr Chevrolet"), located in Archer City, Texas. Parr Chevrolet entered into a "floor plan" financing agreement with Plaintiff in the form of a note, secured by all of Parr Chevrolet's new vehicles, and certain parts and equipment. Debtor personally guaranteed payment of the note through a separate guarantee agreement. The maturity of the note was extended through several amendments.

Over the course of their relationship, the Plaintiff began to suspect that vehicles were being sold "out of trust" when inspections revealed that some vehicles were unaccounted for on the lot. Debtor, at first, gave various reasons for the absence of these vehicles, but in December, 2003, admitted that he had sold twelve vehicles and had not remitted the money to the bank to pay-down the note. The parties tried to work out a payment plan, but ultimately, the remaining inventory of Parr Chevrolet was sold to pay off another lender and to pay off part of the balance on the note with the Plaintiff. The remaining balance due to Plaintiff was put into a new note, dated April 30, 2004 (the "2004 Note"). Along with the 2004 Note, the Debtor also gave the Plaintiff a second lien on the

real property where Parr Chevrolet had operated. Over the course of the original financing arrangement with Plaintiff, the extensions and renewals, and the 2004 Note, Debtor provided several financial statements to Plaintiff. Plaintiff asserts that these financial statements were false and that Plaintiff relied on these statements in entering into the loan agreements with the Debtor.

Debtor ultimately defaulted on the 2004 Note and filed his Chapter 7 bankruptcy petition on May 16, 2005. Plaintiff now claims that the remaining balance of the 2004 Note, $352,902.11, is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), -(a)(2)(B) and (a)(4).

**Analysis**

The burden is on the Plaintiff to prove by a preponderance of the evidence that each of the elements under subsections 523(a)(2)(A), -(a)(2)(B) and (a)(4) have been met. *See Grogan v. Garner,* 498 U.S. 279, 286-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also In re Mercer,* 246 F.3d 391, 403 (5th Cir.2001).

**Sections 523(a)(2)(A) and (B)**

Bankruptcy Code Section 523(a)(2)(A) provides in relevant part that a debt will not be discharged in bankruptcy if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Thus, for a debt to be nondischargeable under section 523(a)(2)(A), a creditor must show:

      (1) the debtor made a representation;
      (2) the debtor knew the representation was false;
      (3) the representation was made with the intent to deceive the creditor;
      (4) the creditor actually and justifiably relied on the representation; and
      (5) the creditor sustained a loss as a proximate result of its reliance.

*General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

"Section 523(a)(2)(B) provides that a debt is excepted from discharge to the extent it is obtained by use of a written statement '(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such ... credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive.'" *Id.*

Plaintiff argues that the financial statements produced by the Debtor over the course of their relationship were false, and points out that the Debtor's schedules do not match the statements that Plaintiff was given. However, at the trial, Plaintiff did not prove by a preponderance of the evidence that the statements were false at the time that they were given to Plaintiff. Further, because of their on-going lending relationship, and Plaintiff's familiarity with the Debtor's financial condition at the time that the parties entered into the 2004 Note, the Plaintiff did not prove that it relied on the Debtor's representations and financial statements in making the loan.

Plaintiff did not prove that it justifiably relied on statements made by the Debtor in making the 2004 Note arrangement with the Debtor. The Supreme Court clarified the reliance element in *Field v. Mans,* 516 U.S. 59, 73, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), where it said "[f]ollowing our established practice of finding Congress's meaning in the generally shared common law when common-law terms are used without further specification, we hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance." The "actual reliance" standard requires that the creditor prove that it, in fact, relied on representations of the debtor. *See In re Mercer,* 246 F.3d 391 (5th Cir.2001). Here, Plaintiff did not meet its burden of proof.

**Section 523(a)(4)**

Bankruptcy Code Section 523(a)(4) provides that a debtor is not discharged from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To show non-dischargeability under § 523(a)(4) for fraud or defalcation, a creditor must prove by a preponderance of the evidence that (1) the debt was caused by fraud or defalcation, and (2) there was a fiduciary relationship between the parties at the time the debt was created. *In re Chavez,* 140 B.R. 413, 422 (Bankr. W.D. Tex. 1992).

In *Miller v. Abrams (In re Miller)*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit stated that the discharge exception under section 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts, both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Id*. at 602 (quoting *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987).

A fiduciary under § 523(a)(4) does not refer to any relationship involving confidence, trust or good faith, rather § 523(a)(4) concerns a relationship arising out of a technical or express trust. *Texas Lottery Commission v. Tran (In re Tran),* 151 F.3d 339, 342 (5th Cir.1998); *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934). *Davis v. Aetna* involved a "floor plan" financing arrangement between a retail automobile dealer and a lender. Davis sold automobiles and did not remit the required loan payoff proceeds to Aetna. He then filed a Chapter 7 bankruptcy case, and Aetna asserted that Davis' obligation to remit the proceeds of the sale to the extent of its advanced credit was excepted from discharge by reason of his fraud or misappropriation while acting in a

fiduciary capacity. The Supreme Court determined that Davis did not occupy the position of a fiduciary in relation to Aetna. *See id*. 293 U.S. at 610-11.

Here, the facts are similar to *Davis v. Aetna*, the debtor's relationship with the Plaintiff did not rise to the level of a fiduciary relationship required under § 523(a)(4). The vehicles did not belong to the bank, the proceeds from vehicle sales were to be held in "trust" by the Debtor, but this was merely a covenant in the loan agreement for the Debtor to segregate the funds and deliver them to the bank, this did not rise to the level of a trust agreement with the Plaintiff.

**Conclusion**

Based on these findings, the Plaintiff has not met its burden of proof to show that it relied on statements made by the Debtor in making the 2004 Note, or that the Debtor was a fiduciary. Therefore, subsections 523(a)(2)(A), -(a)(2)(B) and -(a)(4) of the Bankruptcy Code are not applicable, and the debt asserted by Plaintiff is discharged.

A separate judgment will be entered consistent with this opinion.

###End of Opinion###